W. D. SLATON, ASSIGNEE, ETC., v. J. W. WELBORNE ET AL.

No. 2630.

**Practice—Charge—Parties—Vendor's Lien.**—Archibald, assignee of Jacobs, sold to J. W. Welborne a house and lot for $3000, one-half cash and the purchaser's note for the balance.   Archibald was also agent and cashier for C. W. Israel & Co., an insolvent banking house.   Before the maturity of the note Archibald took from Welborne another note for $1545 payable to C. W. Israel & Co. and executed his deed to Welborne for the house and lot.   The latter note was renewed, and suit was brought thereon against J. W. Welborne and R. D. Welborne, makers of the note.   Archibald having been succeeded as assignee of Jacobs by Slaton, Slaton intervened, claiming for the Jacobs estate to be the equitable owner of the note sued on, and seeking judgment and a decree foreclosing the vendor's lien upon the house and lot.   There was testimony

showing that the note sued on represented the unpaid purchase money on the house and lot. *Held:*

1. It was error in the court to instruct the jury to find against the intervenor Slaton.

2. Neither the substitution of the several notes instead of the original nor the additional name to the last note operated to release the vendor's lien.

3. Israel & Co. were proper parties, but being nonresidents, in event service could not be had upon them the suit could proceed to judgment without them.

4. As against the equitable title to the note in Slaton the garnishment by creditors of Israel & Co. against the makers of the note would take nothing.

APPEAL from Clay. Tried below before Hon. P. M. Stine.

The statement made in brief of appellant, conceded to be substantially correct, is given.

This was an action originally brought in the District Court of Clay County on the 5th day of February, 1887, by John T. Craig as assignee of C. W. Israel & Co., against J. W. Welborne and R. D. Welborne, defendants, upon a certain note dated October 1, 1885, payable four months after date to C. W. Israel & Co. or order, for the sum of $1606.06, with 12 per cent interest per annum from maturity and 10 per cent for attorney fees.

While this case was pending one John F. Conn, as assignee of A. C. Jacobs, on the 18th day of April, 1887, filed his plea of intervention, claiming said note as the property of the estate of A. C. Jacobs and praying for judgment thereon against the makers thereof. The cause having been continued, the appellant W. D. Slaton, as successor of said Conn as assignee of Jacobs, on the 10th of January, 1888, filed his first amended plea of intervention, wherein C. W. Israel & Co. were made parties defendant, and wherein he set up the following facts, viz.:

That the plaintiff was not entitled to recover the note in controversy in the capacity in which he sued for the same, viz., as assignee of C. W. Israel & Co.; that the deed of assignment under which said Craig was pretending to act was as against the intervenor fraudulent and void; that on the 4th day of January, 1884, said Jacobs made a deed of assignment to one G. A. Archibald for the benefit of his creditors; that said Archibald qualified as such assignee and entered into a bond, with C. W. Israel & Co., Phil Lanius, and W. B. Plemons as sureties thereon; that among the property so conveyed to said Archibald as assignee of A. C. Jacobs was a certain store house and lot in the city of Henrietta; that on the 10th day of June, 1885, said G. A. Archibald, as assignee of A. C. Jacobs, sold and conveyed said house and lot to defendant J. W. Welborne in consideration, among other things, of the note in controversy, and that a lien was retained on said property to secure said note; that said G. A. Archibald was also at said date the cashier and agent of C. W. Israel & Co. as well as the assignee of A. C. Jacobs, and that said C. W. Israel & Co. were then and there engaged in carrying on a banking business in said

city; that said Archibald, acting both in his capacity as assignee of said A. C. Jacobs and as cashier and agent of C. W. Israel & Co., and for the purpose of swindling said estate, caused said note to be made payable to said Israel & Co.; that said firm had paid nothing for said note, and that it held the same in trust for said estate; that said J. T. Craig was attempting to collect the same and to appropriate the proceeds thereof to the use and benefit of the estate of said C. W. Israel & Co.; that C. W. Israel & Co., G. A. Archibald, Phil Lanius, and W. B. Plemons were each and all on said 10th day of June, 1885, and are yet openly and notoriously insolvent; that on the 16th day of December, 1886, G. A. Archibald resigned his position as assignee of said Jacobs, and said John F. Conn was duly appointed as his successor as such assignee; that on the 1st day of December, 1887, said Conn resigned his position as such assignee, and appellant Slaton was thereupon appointed as successor to said Conn and that he duly qualified as such; that on the 24th day of October, 1885, said C. W. Israel & Co., for the purpose of placing said note beyond the reach of the assignee of said Jacobs, fraudulently transferred said note to said Craig.

Appellant Slaton prayed for judgment against plaintiff for the possession of said note, and against the makers thereof for the amount of the same with a foreclosure of their lien.

He also prayed in the alternative for judgment against C. W. Israel & Co. for the value of the note.

Notice of this plea and of the suit was duly served on J. N. Israel, one of the firm of C. W. Israel & Co., in the State of Illinois.

After the defendants J. W. and R. D. Welborne had answered, the plaintiff Craig, on the 17th day of March, 1888, took a nonsuit, and the cause was ordered to proceed to trial as between appellant and said defendants and C. W. Israel and J. N. Israel.

To this order the defendants J. W. and R. D. Welborne duly excepted. The defendants C. W. Israel & Co. and J. N. and C. W. Israel all failed to answer.

On the 15th day of April, 1888, an order was made requiring appellant Slaton to give security for costs, and in answer to said rule he filed his affidavit of inability to give such security, and the cause was allowed to proceed to trial. At the March Term, 1888, the cause was continued and F. M. Davis, C. W. Easley, and H. B. Schuler were made parties defendant, and on the 21st day of September, 1888, the defendants J. W. and R. D. Welborne filed their first amended answer, wherein they pleaded (1) general denial; (2) that the note sued on was given by them for money borrowed of C. W. Israel & Co.; that it was not given for the property described in the intervenor's plea, and that no lien existed on said property to secure said note; that they did not know who·was the owner of said note, but that the same was claimed by C. W. Israel & Co.; that the

intervenor did not own said note, but that H. B. Schuler was in possession of and was claiming the title to said note; that F. M. Davis and C. W. Easley, both of whom were creditors of C. W. Israel & Co., had sued out and caused to be served on said defendants J. W. and R. D. Welborne writs of garnishment, wherein they sought to hold the proceeds of said note as the property of C. W. Israel & Co.; that said garnishment proceedings were yet pending in the District Court of Clay County.

On the 2nd day of October, 1888, H. B. Schuler filed his answer, wherein he pleaded (1) general denial; (2) that as against the intervenor W. D. Slaton he asserted no claim to the note in controversy, but that as against all of the other parties herein that he was the true owner thereof; that about the first day of December, 1885, the plaintiff Craig forcibly took possession of the note in controversy and claimed the same as assignee of C. W. Israel & Co.; that on the 16th day of January, 1886, defendant Schuler obtained a judgment against C. W. Israel & Co. in the United States Court for $13,400; that he also sued out of said court and caused to be served on said Craig on the 18th day of September a writ of garnishment, commanding him to answer what effects, if any, he held in his hands belonging to said C. W. Israel & Co.; that afterwards, at the January Term of said United States Court in 1888, said defendant obtained a judgment against said Craig as garnishee of said Israel & Co. for the said note; that said Craig thereupon in satisfaction of said decree transferred the same to said H. B. Schuler, and the amount of the same was thereupon credited on said judgment so rendered against said Israel & Co., and the said defendant Schuler thereupon became the legal owner of said note.

Defendant Schuler prayed for judgment against the defendants J. W. and R. D. Welborne for the amount of said note, and for a foreclosure of the vendor's lien on the property described in the petition of the intervenor.

The defendants F. M. Davis and C. W. Easley each filed a separate answer, setting up that the note in controversy was the property of C. W. Israel & Co., and that it was subject to their respective writs of garnishment served on the defendants J. W. and R. D. Welborne. They also set up the pendency of their garnishment proceeding, and prayed that the intervenor take nothing by his suit and that all of the defendants go hence without delay, and that they, Davis, Easley, and said J. W. and R. D. Welborne, all be left to litigate their respective rights in the garnishment proceedings which were then pending.

The defendants J. W. and R. D. Welborne, F. M. Davis, and C. W. Easley all joined in an answer to the plea of H. B. Schuler, wherein they pleaded (1) general denial; (2) that said Schuler was not the owner of the note sued on, but that the same was the property of C. W. Israel & Co.; that said note was not a lien on the property described in the intervenor's petition, but that the same was given to said Israel & Co. for borrowed

money, etc.; that the judgment under which the defendant Schuler claimed title to the note as set out in his plea was fraudulent and void, etc.

On the 4th day of October, 1888, a trial was had before a jury, which, under the instructions from the court, rendered a verdict as follows, viz.: " We the jury find for the defendants against W. D. Slaton, and in favor of F. M. Davis against H. B. Schuler, and in favor of H. B. Schuler against C. W. Easley. We also find that the property is not subject to the vendor's lien."

Upon this verdict a judgment was rendered that the intervenor W. D. Slaton take nothing by reason of his suit, and that as to him all of the defendants be discharged and go hence with their costs. As between the other defendants judgment was rendered in favor of H. B. Schuler and against J. W. and R. D. Welborne on the note sued on for the sum of $1880 principal and interest, and $150 as attorney fees; but this judgment was made subject to any judgment that may be hereafter rendered in the garnishment proceedings in favor of F. M. Davis and against said J. W. and R. D. Welborne as garnishees of C. W. Israel & Co., and the execution of the judgment in favor of said Schuler was suspended until the final determination of said garnishment proceedings. As between the defendants Schuler and Easley the ownership of said note was awarded to Schuler.

The intervenor W. D. Slaton and H. B. Schuler appealed.

*Hazelwood & Templeton,* for appellant Slaton.—1. Where the evidence in a case is conflicting, and where any part thereof, if the same was admitted to be true, would sustain a verdict and judgment different from that directed by the court, it is error for the court in such a case to instruct the jury peremptorily to find for either of the litigants, but the issues raised by the testimony should be fairly submitted to and passed upon by the jury under proper instructions from the court. Rev. Stats., art. 1317; Patton v. Rucker, 29 Texas, 402–407; Rogers v. Broadnax, 24 Texas, 541, 542.

2. Where property belonging to a trust estate is sold, and the purchaser thereof executes as a part consideration therefor his promissory note, payable at a future day to the trustee of such property, and where such trustee transfers such note to a third person who has notice of the trust character thereof, such third person, as against said estate, can acquire no title to such note nor to any others given in renewal thereof until said estate is actually paid therefor. Kennedy v. Baker, 59 Texas, 150, *et seq.;* Atkinson v. Ward, 5 S. W. Rep., 97, and note; Craig v. Finley's admr., 6 S. W. Rep., 648; Graff v. Castleman, 16 Am. Dec., 741; Bunting v. Ricks, 32 Am. Dec., 599; Miller v. Davidson, 44 Am. Dec., 715, 720, 721; Heth v. Railway, 50 Am. Dec., 88–93; Brown v. Johnson, 51 Am. Dec., 118, 120; 2 Pome. Eq., secs. 1048, 1051, 1058; 1 Perry on Trusts, sec. 127.

3.   Where property belonging to a trust estate is sold, and the purchaser thereof executes as a part consideration therefor his promissory note, and makes the same payable at the request of the trustee to a third party who has notice of the trust character of such note, such third party, as against said estate, can acquire no title to such note or to any other note given in renewal thereof until the estate is actually paid therefor.

4.   The credit entered on the books of the bank by G. A. Archibald, as cashier of C. W. Israel & Co., to G. A. Archibald, as assignee of A. C. Jacobs, for the sum of $1489.25, did not of itself operate as an actual payment by said Israel & Co. to said estate of the consideration for the note held by them, but such note and all renewals thereof remained the property of said estate.   Robson v. Watts, 11 Texas, 764–768; McAlpin v. Cassidy, 17 Texas, 450; Story on Agency, secs. 98, 181, 413, 430.

5.   Where property belonging to a trust estate is sold by the trustee thereof, and the purchaser of such property, with notice of its trust character, executes as a part consideration therefor his promissory note, such purchaser himself becomes a trustee for said estate of such property to the extent of such unpaid purchase money, and a lien exists upon said property in his hands to secure the payment of said indebtedness to said estate; and until the same is actually paid by such purchaser he can, as against said estate, acquire no title to such property, nor can such original trustee waive such lien so as to free the property sold therefrom.   Zundell v. Gess, 73 Texas, 144; Bank v. Carpenter, 28 Am. Dec., 616, 621; Bunting v. Ricks, 32 Am. Dec., 699, *et seq.;* Sheperd v. McKeevers, 8 Am. Dec., 561; 2 Pome. Eq., secs. 688, 920, 1055, 1053, 1079, 1000; 1 Perry on Trusts, secs. 221–227; 2 Perry on Trusts, secs. 828–836.

*Hazelwood & Templeton*, for appellant Schuler, cited Russell v. Farquhar, 55 Texas, 355; McCammant v. Roberts, 66 Texas, 263; Freem. on Judg., 416; Burford v. Rosenfield, 37 Texas, 42; Odle v. Frost, 59 Texas, 684; Gillenwaters v. Scott, 62 Texas, 670; Teal v. Terrell, 58 Texas, 261; Eason v. Eason, 61 Texas, 225; Christian v. Austin, 36 Texas, 540; Flanagan v. Cushman, 48 Texas, 241; Irvin v. Garner, 50 Texas, 48.

*A. K. Swan*, for appellees.— 1.   The note in controversy was the property of C. W. Israel & Co., and therefore the assignee of A. C. Jacobs could not recover either the note or the debt evidenced thereby.   Hence any error committed in the case with reference to any other point is wholly immaterial as to appellant W. D. Slaton, assignee.

2.   H. B. Schuler had no interest in the note in question, because the judgment in the garnishment proceedings under which he claims is wholly void so far as it attempts to award him title in and to said note, and therefore any error committed by the court is wholly immaterial as to him.

The only way H. B. Schuler could have reached this particular debt

would have been to garnishee the debtor, and not by garnishing the party having possession of the note.

If it could be reached by garnishment the proper and only way to obtain title in it would have been to have had it seized by the sheriff and sold, as is provided in case of property subject to execution. Sayles' Civ. Stats., art. 207.

The court had no jurisdiction over the note, because it could not be brought into court by the writ, and therefore the judgment is void for want of jurisdiction in the court over the subject matter, and Craig could not waive the jurisdictional matter. Insurance Co. v. Friedman, 74 Texas, 56.

The record shows the whole affair between H. B. Schuler and Craig, garnishee, to have been collusive and fraudulent.

3. Appellees are making no complaint about the judgment as between them, and unless such error, if any there be, reaches the appellants they will not be heard to complain.

In conclusion we submit that as between Schuler and appellee Davis, whose garnishment was prior to Schuler's, there can be no doubt about the correctness of the judgment. He pursued the proper course and was first in diligence.

And with reference to whether there was a bona fide transaction between Welborne and Archibald, the evidence makes it so clear that there were two contracts between them—the first with Archibald as assignee, and the next as a banker loaning money to Welborne to pay off the first note—that we deem it unnecessary to discuss the matter. The quibble about no money passing over the bank's counter or passing hands deserves no notice.

Time and again has it been held by the highest authority that if a check be handed into a bank and be certified it becomes a certificate of deposit, and operates as an absolute payment of the check, transfers the fund to the holder, dissolves all relation between the drawer and drawee, and changes the relation of the holder to that of depositor; and in this case the evidence shows that the credit was entered up to Archibald as assignee. Now, did the bank owe the estate that amount? Of course it did, and therefore Welborne did not.

STAYTON, CHIEF JUSTICE.—This action was brought originally by John T. Craig, who sued as assignee under an assignment for the benefit of creditors made by C. W. Israel & Co., but the assignment under which he claimed having been adjudged invalid he subsequently took a nonsuit.

The action was brought against J. W. and R. D. Welborne on a note which they had executed to C. W. Israel & Co., of date October 1, 1885, for $1606.06.

On January 4, 1884, one A. C. Jacobs made an assignment under the

statute for the benefit of his creditors, in which G. A. Archibald was made assignee.

That estate owned a house and lot, and on June 10, 1885, that was sold by Archibald to J. W. Welborne for the sum of $3000, one-half of which was paid in cash and for the balance Welborne executed a note to Archibald maturing on or before August 1, 1885, the latter executing to Welborne a bond for title.

The evidence shows that about June 15, 1885, Welborne executed a note to Israel & Co. for about $1545, which it is claimed by the defendants Welborne was executed for money borrowed by J. W. Welborne from Israel & Co., who were bankers, with which it is claimed that the note executed to Archibald was paid.

In renewal of the note last named the note sued on in this case was executed.

Archibald resigned his position as assignee of Jacobs' estate and John T. Conn was appointed in his stead, but he having resigned, appellant Slaton was appointed assignee and duly qualified.

Before Craig took a nonsuit Conn intervened in the case as assignee of Jacobs' estate, and on his resignation the intervention was continued by Slaton.

The pleadings in intervention in effect assert that the note sued upon equitably belongs to the estate of Jacobs, and asserts that the second note executed by J. W. Welborne to C. W. Israel & Co. was not given for money borrowed with which the note for balance of purchase money executed to Archibald was paid, but that the same was executed without any consideration running from Israel & Co. for the fraudulent purpose of giving the transaction the semblance of a loan, when the real transaction was the execution of that note on no other consideration than the surrender by Archibald of the note first executed to him to secure a part of the purchase money for the house and lot sold to Welborne.

If that was the case, as between Israel & Co., J. W. Welborne, and the estate of Jacobs there can be no doubt that the equitable right to that note or its proceeds was in the estate of Jacobs, and his assignee might have enforced it.

If such was the sole consideration for that note the right to the note now sued on or the sum evidenced to be due on it, it having been given as is conceded in renewal of the second note, is in appellant Slaton, and the fact that it was signed by R. D. Welborne as well as by J. W. Welborne is a matter of no importance.

The evidence shows that Archibald was assignee of Jacobs' estate and that he was and long before had been the cashier and practical manager of the bank of C. W. Israel & Co. when all those transactions occurred.

The evidence further shows that he made a deed to J. W. Welborne for the house and lot on June 15, 1885.

There is no evidence whatever which shows that the bank of Israel & Co. discounted the note executed by J. W. Welborne to Archibald and therefor paid to Archibald any sum of money, though there was an entry made in the books of the bank by Archibald showing such a discounting and a deposit to his credit which was never paid, but there is evidence tending strongly to show that at all times subsequent to June 10, 1885, the bank of C. W. Israel & Co. was insolvent, and known to be so by Archibald.

The evidence further tends to show that the bank had no money to loan, and was in such condition that it was very desirable to have paper which it could use as collateral security to prop up for a time a credit it may have had but was not entitled to.

It is evident that there was a strong desire so to use both notes executed to Israel & Co., and the reason for taking the last evidently was to get a note with two names on it, which it was thought would stand better in the market than one with only one name, although the parties seem to have been conscious that the name of R. D. Welborne would add no real value to the note.

The court instructed the jury to find a verdict against appellant Slaton, and thus took the case from the jury.

In view of the disposition that will be made of the case we deem it improper to comment upon the evidence, but feel constrained to hold that there was evidence tending strongly to prove such a state of facts as would entitle appellant Slaton to recover as against J. W. and R. D. Welborne and Israel & Co. the principal and interest on the note sued upon, and the court below erred in not submitting the case to the jury on a proper charge.

If appellant Slaton shall establish his right to recover we see nothing in the evidence to deprive him of a lien on the property sold by Archibald to J. W. Welborne to secure the payment of the judgment, for there was no agreement that the ordinary vendor's lien should not exist, nor was any security taken for the unpaid purchase money that would operate a waiver of such a lien.

In the adjustment of the rights of the parties C. W. Israel & Co. would seem to be proper parties, and they were so made, but being nonresidents of the State they have not been so served as to give the court jurisdiction over them.

They ought to be brought before the court if possible, but if this can not be done the action may proceed without them and the rights of the parties before court adjusted.

M. B. Schuler, F. M. Davis, and C. W. Easley came into the case, and we may say that no one of them shows any right that can defeat the claim asserted by appellant Slaton if he establishes it, for they all claim as creditors of Israel & Co. through garnishment proceedings against the defend-

ants Welborne for indebtedness of C. W. Israel & Co., except Schuler, who claims through a garnishment proceeding against Craig as assignee under the assignment attempted to be made by C. W. Israel & Co., but as that assignment passed nothing to Craig a judgment against him in a case in which he was not the representative of the legal or beneficial owner of the note can not affect the right of Israel & Co., Slaton, Davis, or Easley.

What the right of Davis and Easley may be in case Slaton fails to establish the claim asserted by him is not before us for decision.

For the error of the court in instructing the jury to find against appellant Slaton, its judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered October 24, 1890.